JOHN J. PARRISH, a minor, by Charles Bowker *et al.*, his Legal Guardians and next Friends, Plaintiff-Appellee, *v.* RONALD J. DONAHUE, Defendant-Appellant.

Third District No. 82—65

Opinion filed December 20, 1982.

Mark F. Cyr, of Peter F. Ferracuti & Associates, Ltd., of Ottawa, for appellant.

Louis E. Neuendorf & Associates, of Sandwich, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiff John J. Parrish, a minor, by his next friends Charles Bowker and Roxanne Bowker, legal guardians, filed a three-count complaint for compensatory and exemplary damages for personal injuries allegedly occasioned by the assault and battery of defendant Ronald J. Donahue. At the close of the evidence, the circuit court of La Salle County dismissed one count of the complaint and directed a verdict on the question of liability in favor of plaintiff. The jury thereafter returned a verdict of $10,000.

The scenario of this tort action began at approximately 11:45 p.m. on May 5, 1980. Jane McGuinn was awakened by the sound of a vehicle being driven in the fields of her farm. She called defendant as he farmed the fields as her tenant. When defendant arrived, he found a car, which had broken through a pasture fence at several points, spinning "donuts" in the newly-planted fields. He attempted to stop the vehicle and fired a warning shot from a handgun. The driver responded by attempting to run him over, driving through another section of fence, and again driving at him. Defendant fired a second shot and followed the car down a country road. The driver parked in front of the Bowker residence and ran around the house. Defendant followed.

The parties' versions of what then happened bear almost no similarity. Plaintiff testified that, after hearing a vehicle coming up the road, he saw an individual running around the house and up to the barn. Defendant appeared and ordered him, at gunpoint, to turn around and put his hands on his truck. Plaintiff explained that defendant then kicked him in the groin, ordered him down "on all fours," and twice struck him in the head with the butt of the handgun. Defendant testified that plaintiff came out of the barn and, while he realized he was not the driver of the car, believed the driver might be

inside the barn. He asked plaintiff, at gunpoint, to turn around and put his hands on the truck. Defendant explained that plaintiff then whirled around and swung at him, whereupon he pushed him to the ground with the gun butt.

■ The first issue we today address is whether the trial court erred in directing the verdict on the question of liability. The standard is well established:

> "[V]erdicts ought to be directed *** only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelming favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

So viewing the facts, defendant was called late in the evening and when he went to his fields, someone twice tried to run him over. He pursued this individual and found plaintiff. Concerned that his assailant was in the barn from which plaintiff had exited, he held plaintiff at bay. When plaintiff spun around and threw a punch at him, defendant pushed him down with the butt of his handgun.

With respect to civil liability, an assault can be defined as an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented. (See 3 Ill. L. & Prac. *Assault and Battery* sec. 2 (1953).) A battery can be defined as the wilful touching of the person of another or a successful attempt to commit violence on the person of another. (See 3 Ill. L. & Prac. *Assault and Battery* sec. 2 (1953).) Under these definitions defendant, in the absence of an affirmative defense, committed the alleged torts.

Defendant raised the affirmative defense of provocation; however, he did not similarly raise self-defense as an issue. As was recently noted:

> "In an action for assault and battery, provocation would not defeat the action except to the extent that it may be involved in the issue of self-defense. Thus, in the present case, self-defense would have been the proper defense to raise, rather than provocation, and self-defense would be an ultimate issue. [Citations.]" (*Walker v. Dominick's Finer Foods, Inc.* (1980), 92 Ill. App. 3d 645, 647, 415 N.E.2d 1213, 1215.)

As self-defense was not here raised, the trial court did not err in directing the verdict of assault and battery.

■ Our so holding, however, does not dispose of the issue. Count

II of the complaint alleged that defendant was guilty of wilful and wanton assault and battery, such a conclusion premising an award of exemplary damages (*Chicago Consolidated Traction Co. v. Mahoney* (1907), 230 Ill. 562, 82 N.E. 868). In directing a verdict on the issue of liability, the trial court impliedly found the tort at bar to have the requisite wanton or malicious character. Viewing the facts from the *Pedrick* perspective, defendant only held plaintiff at bay because he came out of a barn where defendant's assailant might have still remained. Only when plaintiff spun and threw a punch at him did defendant strike plaintiff. That single blow occurred as defendant attempted to push him down. Plaintiff's damages consisted of a $159.30 bill for emergency room treatment and a $65 bill from his doctor. He has no permanent injuries and has not required medical attention since the day following the incident. In most cases the issue of wilful and wanton misconduct is a question for the jury, and only in an exceptional case will the issue be taken from the jury's consideration. (*Cf., e.g., Pedersen v. Kinsley* (1975), 25 Ill. App. 3d 567, 323 N.E.2d 562 (negligence action).) Given the circumstances at bar, we do not find the evidence, viewed from the *Pedrick* perspective, so overwhelmingly favors plaintiff on this issue that no contrary verdict could ever stand. This being the case, the trial court erred in taking the question of whether defendant's conduct was wanton and malicious from the jury.

As this cause must necessarily be remanded, we shall address an additional issue likely to arise again. During direct examination, Roxanne Bowker testified that she smelled beer on defendant's breath during a conversation after the incident. On cross-examination, she said she had no opinion as to whether he was intoxicated. Charles Bowker later testified that, the day after the incident, defendant stated "that if he hadn't been drunk probably, he probably wouldn't have done it." Defendant moved for a mistrial and introduced refuting evidence, including the testimony of a deputy who came to the scene to investigate. At issue is the propriety of such evidence.

While there is some authority that evidence of a defendant's intoxication during an assault may, under certain circumstances, be admissible (see 6 Am. Jur. 2d *Assault and Battery* sec. 208 (1963)), the issue has not been widely discussed in actions of this nature. Reference to dramshop or criminal cases are neither controlling nor persuasive as, in such cases, the presence of intoxication is a necessary part of the case. (*Shore v. Turman* (1965), 63 Ill. App. 2d 315, 210 N.E.2d 232, *appeal denied* (1966), 33 Ill. 2d 626.) Where such is not the case, the issue most frequently arises in negligence actions, where the rule

has been stated:

"Evidence of intoxication is admissible in a personal injury action as tending to show the negligence of one of the parties. [Citation.] \*\*\* However, drinking, standing alone, cannot be equated with intoxication, nor can the use of alcoholic liquor, standing alone, characterize a person as intoxicated. [Citation.] Accordingly, questions cannot be asked which intimate to the jury that a party was intoxicated at the time of the accident unless there is supporting evidence [citation]; in the absence of supporting evidence, testimony concerning the drinking of intoxicants should be stricken [citation], and under certain circumstances, may constitute reversible error notwithstanding a sustained objection. [Citation.]" (*Ballard v. Jones* (1974), 21 Ill. App. 3d 496, 501, 316 N.E.2d 281, 286, *appeal denied* (1974), 57 Ill. 2d 604.)

Moreover,

"A plaintiff must bolster the probative value of the drinking with other evidence of the next step in the chain of causation, namely, actual impairment of physical or mental capabilities so as to diminish the defendant's ability to act with due care. [Citation.] In short, intoxication." *Bohnen v. Wingereid* (1979), 80 Ill. App. 3d 232, 237, 398 N.E.2d 1204, 1208.

■ In the case at bar, intoxication is clearly not a necessary part of the cause of action as in a dramshop or criminal case. Defendant's ability to act with due care is likewise not a part of the cause of action as it might be in a negligence action. Due to these facts and the prejudicial nature of the evidence of drinking (see *Bohnen v. Wingereid* (1979), 80 Ill. App. 3d 232, 238, 398 N.E.2d 1204, 1208) and intoxication, plaintiff may not introduce such evidence on retrial of this cause.

Accordingly, the judgment of the circuit court of La Salle County is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed and remanded in part.

ALLOY and HEIPLE, JJ., concur.